[Cite as *Babe v. Babe*, 2017-Ohio-4384.]

STATE OF OHIO, CARROLL COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

DIANA M. BABE                          )
                                       )
   PLAINTIFF-APPELLANT              )
                                       )      CASE NO. 16 CA 0910
VS.                                    )
                                       )      OPINION
ALLEN H. BABE                          )
                                       )
   DEFENDANT-APPELLEE               )

CHARACTER OF PROCEEDINGS:      Appeal from the Court of Common Pleas, Domestic Relations Division, of Carroll County, Ohio
Case No. 2011 DRA 26842

JUDGMENT:      Affirmed.

APPEARANCES:
For Plaintiff-Appellant      Attorney Arnold Glantz
4883 Dressler Road, N.W.
Canton, Ohio 44718

For Defendant-Appellee      Attorney Jason Reese
101 Central Plaza South, Suite 1003
Canton, Ohio 44702

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: June 15, 2017

DeGENARO, J.

{¶1} Plaintiff-Appellant, Diana M. Babe, appeals the decision of the trial court ordering her to pay $220.18 plus a 2% processing charge per month in child support to her ex-husband, Defendant-Appellee, Allen H. Babe, Jr., following the trial court's termination of the parties' shared parenting plan and allocation of sole custody of the parties' three minor children to Allen. On appeal, Diana argues the trial court abused its discretion by failing to deviate downward from the child support guidelines because the support obligation places too great a financial burden on her. For the following reasons, Diana's sole assignment of error is meritless and the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2} In 2012, Diana and Allen divorced; at the time the parties had four minor children. Diana was named the residential and custodial parent, and visitation was set for Allen, who was ordered to pay child support to Diana. Diana subsequently moved to Columbiana County while Allen maintained residency in Carroll County. In June 2014, the parties entered into a shared parenting agreement where Allen's parenting time with the children was increased; he continued to pay child support to Diana.

{¶3} On December 1, 2014, Allen filed a motion for change of legal custody, requesting he be named residential parent of the party's minor children, thus terminating the shared parenting plan. As the parties' oldest child has since emancipated, only three children are minors.

{¶4} In June 2015, Allen also filed a motion for contempt against Diana, alleging that he had been denied visitation and that Diana had moved out of the county without informing him or the court. Diana filed her own motion to terminate the shared parenting plan, which included a request that she be named residential parent of the children.

{¶5} On September 22, 2015 and October 9, 2015, the pending motions came for hearing. Among other witnesses, the trial court heard testimony from Diana, Allen, the guardian ad litem Melissa Pitinii, and Columbiana County Department of

Jobs & Family Services childcare investigator Kelly Stoffer. The trial court also conducted in camera interviews of the children, transcripts of which were filed under seal. Additionally, the trial court took judicial notice of public records that Diana's new boyfriend, David Coulter, was a registered sex offender, whose victim had been a 13 year old girl. While Diana denied that Coulter was living with her, there was substantial evidence presented that he did in fact reside with her.

{¶6} With regard to the parties' finances, a financial affidavit filed by Diana on September 15, 2015—just prior to the hearing—lists her expenses, and states that she is employed as an officer for a Canton based security company, but fails to specify her current wages. During the hearing, Diana confirmed her employment and stated she earns $8.10 per hour and averages between 32 and 40 hours per week for an annual gross income of about $14,742.00. She further testified her rent is $900.00 per month, for a total of $10,800.00 per year and that she spends approximately $200.00 per month in gasoline for her car to commute to work in Canton. However, there is no documentary evidence to support her testimony regarding her income.

{¶7} After considering all of the evidence, the trial court sustained both motions to terminate the shared parenting plan. Based upon the witness testimony and the recommendation by the guardian ad litem, the trial court found that it was in the best interest of the minor children to designate Allen as the sole residential and legal custodian of the three children. Further, the trial court not only suspended all of Diana's visitation rights with the children, pending further order of the court, but also strictly prohibited any type of direct or indirect contact by Diana, or any third party on behalf of Diana, with the three minor children. In addition to receiving sole custody of his three children, the trial court ordered Diana to pay child support to Allen and Allen was ordered to provide medical insurance for the minor children through his employer. The trial court also found Diana in contempt for her willful failure to permit Allen to exercise visitation with one of the minor children in April and May of 2015.

{¶8} In a separate entry, the trial court ordered the Carroll County Child

Support Enforcement Agency to "conduct an administrative review of the wages and incomes of the parties and report its findings and recommendations to the Court within twenty (20) days of this entry." The trial court further directed CSEA to "prepare and submit standard child support computation worksheets for one (1) custody scenario, to-wit: Defendant Allen H. Babe, Jr., designated sole residential parent of the parties' minor children."

**{¶9}** The trial court issued its order based on the child support worksheet filed December 22, 2015 by CSEA, and pursuant to the standard child support guidelines ordered Diana to pay Allen $220.18, plus a 2% processing charge, per month for the support of the three minor children.

### Child Support

**{¶10}** In her sole assignment of error, Diana asserts:

The trial court abused its discretion in not deviating from the guideline-amount of child support because the uncontested facts showed that Diana does not have the ability to pay it.

**{¶11}** We review a trial court's decision regarding child support for an abuse of discretion. *Garrett-Long v. Garrett*, 7th Dist. No. 15 MA 0221, 2016-Ohio-7041, ¶ 78, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997). The appropriate amount of child support is primarily determined by the basic child support schedules and the applicable worksheets pursuant to R.C. 3119.02. A court ordering child support "shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and other provisions of sections 3119.02 to 3119.24." R.C. 3119.02. The basic support schedule, codified as R.C. 3119.021, considers the combined gross income of the parents, unless it is below or above the statutory thresholds of $6,600.00 and $150,000.00. Here, the parties' combined gross income is within the statutory range.

**{¶12}** R.C. 3119.022 codifies the worksheet a court is required to use when making the support calculation. The worksheet considers the income of each parent

relative to the shared support obligation and allows for other support and tax obligations. A child support determination "calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due." R.C. 3119.03. R.C. 3119.05 governs how a court is to arrive at a gross income amount for each parent.

{¶13} "If, having complied with R.C. 3119.02 *et seq.*, the trial court decides that the schedule amount is not appropriate, the court *may* decide to deviate from the presumptively correct child support amount." (Emphasis added.) *Mogg v. McCloskey*, 7th Dist. No. 12 MA 24, 2013-Ohio-4358, ¶ 35. A court is permitted to order a child support amount that deviates from the amount of support "that would otherwise result from the use of the basic child support schedule and the applicable worksheet * * * if * * * the court determines that the amount * * * would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3119.22. If a court elects to deviate, the court must cite to factual findings in support of that decision in compliance with the 16 factors contained in R.C. 3119.23.

{¶14} "The party seeking to rebut the basic child support schedule has the burden of presenting evidence which demonstrates that the calculated award is unjust or inappropriate and would not be in the best interest of the child." *Hattenbach v. Watson*, 2d Dist. No. 27071, 2016-Ohio-5648, ¶ 14, quoting *Murray v. Murray*, 128 Ohio App.3d 662, 671, 716 N.E.2d 288 (12th Dist.1999); and citing *MacMurray v. Mayo*, 10th Dist. No. 07AP–38, 2007–Ohio–6998, ¶ 30. *Accord Batcher v. Pierce*, 2015-Ohio-2130, 35 N.E.3d 904, ¶ 19 (9th Dist.)

{¶15} Diana argues the trial court abused its discretion by failing to deviate downward from the child support worksheet calculation because she does not have the ability to pay the amount ordered. She argues a downward deviation is justified pursuant to R.C. 3119.23(K) based upon "[t]he relative financial resources, other assets and resources, and needs of each parent." However, Diana failed to meet her burden of presenting evidence which demonstrates that the calculated award is

unjust or inappropriate and would not be in the best interest of the children. Notably Diana failed to request a deviation during the hearing.

**{¶16}** Further, Diana failed to produce any documentation regarding her current wages. As delineated above, the financial affidavit she filed just prior to the hearing lists her expenses, and states that she is employed but fails to specify her current wages. During the hearing, Diana testified where she is employed, her hourly rate and the average hours per week she works, as well as to some of her monthly expenses. However, there is nothing in the record, other than her testimony, to support her assertions about her current wages. By contrast, Allen submitted his 2014 W-2 as an exhibit at the hearing. Further, Diana admitted that she rents from her father and that "[m]y dad is not going to kick me out."

**{¶17}** The child support worksheet prepared by CSEA as the basis of the child support calculation that was ultimately approved by the trial court, lists Diana's annual gross income as $8,320.00, all of which is derived from unemployment compensation. Presumably this figure was from 2014; however, we do not have the benefit of reviewing the financial documentation presented to CSEA as part of the administrative review ordered by the trial court—it is not included in the record. Notably, the $8,320.00 figure used to compute Diana's child support obligation is less than the $14,742.00 annual gross income she testified to.

**{¶18}** Diana argues that, based upon her current income, she has no funds remaining after her monthly expenses to pay child support. Diana relies upon her own self-serving testimony regarding her expenses and it is clear from the trial court's comments during the hearing that it did not find Diana to be credible, especially with regard to her assertions that she did not share a home with Coulter, a factor that could significantly affect her actual monthly expenses.

**{¶19}** The trial court did not abuse its discretion by failing to order a downward deviation from the child support guidelines. If anything, several R.C. 3119.23 factors would arguably support an upward deviation. Specifically, Allen has physical custody of the three children 100% of the time; Diana was not awarded any

visitation. *See* R.C. 3119.23(D) regarding extended parenting time. Moreover, one of the children has spina bifida, and another has mental health problems. *See* R.C. 3119.23(A), "Special and unusual needs of the children"; and R.C. 3119.23(M), "The physical and emotional condition and needs of the child".

{¶20} In sum, it was well within the discretion of the trial court to order child support based upon the worksheet calculation. Accordingly, Diana's sole assignment of error is meritless and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Robb, P. J., concurs.